UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| ANDREA ILIM DECOSTA, | CIV. NO. 20-00015 LEK-KJM |
| Plaintiff, | |
| vs. | |
| HEADWAY WORKFORCE SOLUTIONS, | |
| Defendant. | |

## ORDER *SUA SPONTE* REMANDING CASE TO STATE COURT

On December 23, 2019, pro se Plaintiff Andrea Llima
DeCosta ("Plaintiff") filed her Complaint in the Third Circuit
Court for the State of Hawai`i ("State Court"). [Notice of
Removal, Exh. 1 (Complaint).] On January 10, 2020, Defendant
Headway HR Solutions, Inc. ("Defendant") removed the case to
this district court. [Dkt. no. 1.] On February 10, 2020,
Plaintiff filed a document which was construed, in part, as a
motion to remand ("Motion to Remand"). [Dkt. no. 9 (Motion to
Remand); EO: Court Order Directing Plaintiff and Defendant to
File Proof Regarding the Amount in Controversy, filed 2/14/20,
(dkt. no. 13).] Although the parties stipulated to withdraw the
Motion to Remand, they were ordered by this Court to file
evidence regarding the amount controversy. [Dkt. nos. 15
(stipulation, filed 2/19/20); EO: Order Regarding Defendant's
Letter Request, filed 2/24/20, (dkt. no. 18).] On February 27,

2020, the parties both filed their statements regarding the amount in controversy. [Dkt. nos. 19 (Def.'s "Mem. in Opp."), 20 ( "Pltf.'s Decl.")).] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). The instant case is *sua sponte* remanded to the State Court for the reasons stated below.

## BACKGROUND

According to the Complaint, Defendant contracted with Research Triangle Institute ("RTI") "to provide field interviewers to collect public health data under a federal contract." [Complaint at pg. 2.] Plaintiff alleges she was employed by Defendant as a field interviewer from November 2017 until January 2019 but did not receive her notice of termination until April 26, 2019. [Id. at pgs. 2-3.] Plaintiff's duties as a field interviewer were to travel to the homes of residents on the island of Hawai`i to conduct surveys of the residents regarding their drug use. Plaintiff's visits were unannounced, however they were preceded by a letter of introduction mailed in advance. Plaintiff disputes whether the residents actually received the letter of introduction prior to her arrival. [Id. at pg. 6, ¶¶ 10-11.]

Plaintiff's claims arise from allegations that she was subjected to sexual harassment by one potential survey respondent, "who repeatedly asked Plaintiff to provide the survey respondent with a massage, in exchange for the survey respondent's participation in the survey" ("Sexual Harassment Incident"). [Id. at pg. 1, ¶ 3.] Plaintiff also alleges she was threatened with gun violence by another potential survey respondent ("Gun Violence Incident"). [Id.] Based on these incidents, and Defendant's responses to them, Plaintiff claims Defendant: failed to provide "adequate supervision and safe work space/conditions" ("Count I"); [id. at pg. 1, at ¶ 1;] engaged in disability discrimination ("Count II"); [id. at pg. 7, at ¶¶ 1-3;] and retaliated against her ("Count III"), [id. at 8, ¶¶ 1-2]. Count II alleges Plaintiff's termination was due to discrimination on the basis of her post-traumatic stress disorder ("PTSD") and mental illness. [Id. at pg. 7, at ¶¶ 1, 3.] Count III alleges Plaintiff's termination was due to, or related to, "Plaintiff's requests for reasonable work accommodations." [Id. at pg. 8, ¶ 2.] Plaintiff also alleges the Sexual Harassment Incident and the Gun Violence Incident "led to Plaintiff being placed on worker's compensation." [Id. at pg. 4, ¶ 1.] The Complaint seeks "unspecified special and general damages" related to "Plaintiff's real and tangible wage loss and personal injury." [Id. at pg. 8.]

Defendant removed the action based on diversity jurisdiction. [Notice of Removal at ¶ 3.] Defendant argued removal was proper because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000. [Notice of Removal at ¶¶ 6-7.]

## STANDARD

28 U.S.C. § 1441(a) states:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

District courts have original jurisdiction over civil actions in two instances: 1) where a federal question is presented in an action arising under the Constitution, federal law, or treaty; or 2) where diversity of citizenship and amount in controversy requirements are met. 28 U.S.C. §§ 1331, 1332. In relevant part, "[j]urisdiction founded on 28 U.S.C. § 1332 requires that the parties be in complete diversity and the amount in controversy exceed $75,000." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam).

This district court has stated:

> "Removal and subject matter jurisdiction statutes are 'strictly construed,' and a

'defendant seeking removal has the burden to
establish that removal is proper and any doubt is
resolved against removability.'" <u>Hawaii ex rel.</u>
<u>Louie v. HSBC Bank Nev., N.A.</u>, 761 F.3d 1027,
1034 (9th Cir. 2014) (quoting <u>Luther v.</u>
<u>Countrywide Home Loans Servicing LP</u>, 533 F.3d
1031, 1034 (9th Cir. 2008)). Thus, "'[i]t is to
be presumed that a cause lies outside [the]
limited jurisdiction [of the federal courts] and
the burden of establishing the contrary rests
upon the party asserting jurisdiction.'" <u>Hunter</u>
<u>v. Philip Morris USA</u>, 582 F.3d 1039, 1042 (9th
Cir. 2009) (quoting <u>Abrego Abrego v. Dow Chem.</u>
<u>Co.</u>, 443 F.3d 676, 684 (9th Cir. 2006))
(alterations in original). This "'strong
presumption against removal jurisdiction means
that the defendant always has the burden of
establishing that removal is proper,' and that
the court resolves all ambiguity in favor of
remand to state court." <u>Id.</u> (quoting <u>Gaus v.</u>
<u>Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992)
(per curiam)).

<u>U.S. Bank, N.A. v. Mizukami</u>, CIVIL NO. 15-00523 JMS-BMK, 2016 WL

632195, at *2 (D. Hawai`i Feb. 17, 2016) (alterations in <u>U.S.</u>

<u>Bank</u>). In accordance with the strong presumption against

removal, in cases "[w]here it is not facially evident from the

complaint that more than $75,000 is in controversy, the removing

party must prove, by a preponderance of the evidence, that the

amount in controversy meets the jurisdictional threshold.

<u>Matheson</u>, 319 F.3d at 1090 (citations omitted).

## I.  <u>Amount in Controversy</u>

Diversity of citizenship is not in dispute.[1]
Therefore, subject matter jurisdiction is contingent on the
amount in controversy exceeding $75,000, excluding interest and
costs.  <u>See</u> § 1332(a).  As an initial matter, the amount of
damages Plaintiff seeks cannot be determined from the Complaint,
as the Complaint simply requests "unspecified special and
general damages."  [Complaint at pg. 8.]  Therefore, Defendant
must demonstrate by a preponderance of the evidence that the
amount in controversy is satisfied.  <u>See</u> <u>Matheson</u>, 319 F.3d at
1090.  Defendant argues that lost wages in the form of both back
pay and front pay are proper components of the amount in
controversy calculation.  [Mem. in Opp. at 8 (some citations
omitted) (citing <u>Garcia v. ACE Cash Express, Inc.</u>, 2014 U.S.
Dist. LEXIS 76351, at *11 (C.D. Cal. May 30, 2014)).[2]]  Defendant
also argues Plaintiff's attorneys' fees and punitive damages
should be included in the calculation, and those sums establish

---

[1] Defendant alleges it is a citizen of Delaware and North
Carolina, and that Plaintiff is a citizen of Hawai`i.  [Notice
of Removal at ¶¶ 4-5.]  In light of the withdrawal of
Plaintiff's Motion to Remand, Plaintiff has presented no facts
or argument to the contrary.

[2] <u>Garcia</u>, No. SACV 14-0285-DOC (RNBx), is also available at
2014 WL 2468344.

that the amount in controversy exceeds the jurisdictional

threshold. [Id. at 11-17.]

A.   **Lost Wages**

At the time of her termination, Plaintiff was working

25.5 hours per week, earning $21.51 per hour, for a weekly wage

of $548.50, and yearly earnings of $28,522.60. [Mem. in Opp.,

Decl. of Mary Thornbury ("Thornbury Decl.") at ¶¶ 10-13. [3]]

Although a trial date has not been set, Plaintiff's counsel

estimates a trial date of January 10, 2022 based on the median

time from case inception to trial in this district court, as

calculated by the Administrative Office of the United States

Courts and republished by the Ninth Circuit on

http://cdn.ca9.uscourts.gov/datastore/general/2018/08/22/HI_June

2018.pdf. [Mem. in Opp., Decl. of Andrew L. Pepper ("Pepper

Decl.") at ¶¶ 3-4 (citing Exh. A (U.S. District Court – Judicial

Caseload Profile).] Defendant argues the back pay calculation

for the time period spanning from Plaintiff's termination on

April 3, 2019 through the estimated trial date of January 10,

2022 amounts to "$21.51 per hour x 25.5 hours per week x 193.71

weeks, for a total of $106,250.90." [Mem. in Opp. at 10 (citing

Thornbury Decl. at ¶ 17).] Defendant also estimates Plaintiff,

---

[3] Mary Thornburg is the Senior Vice President of Human
Resources for Defendant. [Thornburg Decl. at ¶ 1.]

if successful, would receive front pay at "$21.51 per hour x 25.5 hours per week x 104 weeks (or two years) [which] equals $57,044.52." [Id. at 11 (citing Thornbury Decl. at ¶ 18).] Therefore, Defendant argues the amount in controversy, with regard to back pay and front pay, is $163,295.42. [Id. (citing Thornbury Decl. at ¶ 19).]

## 1. **Back Pay**

In determining whether the amount in controversy exceeds $75,000, the court may consider evidence submitted subsequent to the notice of removal. Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002) (per curiam) (citing Willingham v. Morgan, 395 U.S. 402, 407 n.3, 89 S. Ct. 1813, 23 L. Ed. 396 (1969)).

Here, Plaintiff argues removal was improper because she is seeking less than $75,000. [Pltf.'s Decl. at ¶¶ 9,[4] 20.] Plaintiff argues she "has suffered personal injury, in the form of emotional distress and lost wages, due to Defendant's negligent, intentional, discriminatory, or retaliatory acts that are not exclusively voided by any workers compensation benefits" and that "[t]he lost wages total approximately $23,104.76." [Id. at ¶ 9] It appears Plaintiff arrived at this figure by

---

[4] In Plaintiff's Declaration there are two paragraphs on page three listed as number nine, the amount sought by Plaintiff, and other cited information related thereto, are found in the first paragraph nine.

multiplying the difference between her pre-injury weekly wage of $803[5] and the amount she receives pursuant to her worker's compensation benefit, $534.34, by the number of weeks that have elapsed since she has been out of work, eighty-six. See id. at ¶¶ 6-9. It is not facially apparent whether Plaintiff is seeking damages in excess of the lost wages.

With regard to Defendant's back pay calculations, the Court finds that Defendant has not met its burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. In calculating back pay, a court may consider lost wages up until the date of a potential trial. "If a plaintiff claims at the time of removal that her termination caused her to lose future wages, and if the law entitles her to recoup those future wages if she prevails, then there is no question that future wages are 'at stake' in the litigation." Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 417 (9th Cir. 2018). Here, Plaintiff's Complaint does not specifically request future lost wages, however, Plaintiff alleges she suffered "a loss of wages and loss of employment." [Complaint at pg. 2, ¶ 6.] The loss of employment is construed as a reference to the loss of continuing and future wages.

---

[5] Plaintiff alleges her "average wages at the time of the injury were calculated by the worker's compensation carrier, Traveler's, to be $803 per week." [Pltf.'s Decl. at ¶ 6.]

Therefore, because Plaintiff put future wages in controversy, the Court will include lost wages up until the date of trial.

Defendant argues the trial date should be estimated to be two years from the Notice of Removal. [Mem. in Opp. at 9 n.3.] However, recent authority supports an estimation of one year between the filing of a notice of removal and the trial. See, e.g., Fisher v. HNTB Corp., No. 2:18-cv-08173-AB-MRW, 2018 WL 6323077, at *5 (C.D. Cal. Dec. 3, 2018). "Despite the median time to trial estimate that Defendant points out, [some district courts] 'have often found that one year from the date of removal is a 'conservative estimate of the trial date' in employment cases.'" Snow v. United Parcel Serv., Inc., Case No. EDCV 20-025 PSG (AFMx), 2020 WL 1638250, at *3 (C.D. Cal. Apr. 1, 2020) (some citations omitted) (quoting Reyes v. Staples Office Superstore, LLC, No. CV 19-07086-CJC (SKx), 2019 WL 4187847, at *3 (C.D. Cal. Sept. 3, 2019)). At least one district court expressly reasoned that the one year "estimate is more realistic and specific to employment cases than [the median] estimate, which considers the time-to-trial regardless of the type of case." Id. Here, one year is an appropriate estimate of the time to trial. Therefore, the amount in controversy includes lost wages from the date of Plaintiff's termination on April 3, 2019 through a potential trial date of January 10, 2020. This

is a period of 93 weeks, which, at $548.50 per week, results in

an amount in controversy of $51,010.50.[6]

## 2. **Front Pay**

Defendant asserts two years of front pay should be

included in the amount in controversy, as a "conservative

assumption that it will take two years for Plaintiff to find

comparable work." [Mem. in. Opp. at 10 (citations and emphasis

omitted).] Based on the two-year assumption, Defendant

estimates front pay damages to be $57,044.52. [Id. at 11

(citing Thornbury Decl. at ¶ 18).] Defendant did not reference

any facts to support the estimate of two years. Instead,

Defendant lists cases from various courts of appeal that all

similarly hold, in general, that it was not an abuse of

discretion for the respective lower court to award front pay for

---

[6] Although the back pay calculation would likely be further reduced by Plaintiff's worker's compensation benefits, the Court does not need to reach that calculation because the amount in controversy does not approach the jurisdictional threshold. See Archibold v. Time Warner Cable, Inc., No. CV 15-1776 FMO (JPRx), 2015 WL 3407903, at *3 (C.D. Cal. May 27, 2015) (stating that worker's compensation and unemployment insurance benefits "constitute mitigation of damages, and are taken into account in determining the amount in controversy" (some citations omitted) (citing Lamke v. Sunstate Equipment Co., LLC, 319 F. Supp. 2d 1029, 1033 (N.D. Cal. 2004) (finding that the court "should engage in an inquiry into the facts with respect to mitigation of damages)); see also Lamke, 319 F. Supp. 2d at 1033 (stating the mitigation of damages inquiry is analyzed "under the preponderance of the evidence test applicable" to remand). Because the amount in controversy does not reach the jurisdictional threshold, it is not necessary to determine by how much the amount in controversy falls short.

a period of approximately ten years.  See id.  (some citations
omitted) (citing Pierce v. Atchison, Topeka & Santa Fe Ry. Co.,
65 F.3d 562, 574 (7th Cir. 1995)).  Defendant's listing of cases
that ultimately awarded front pay is not persuasive to show that
an award of front pay is likely here because Defendant did not
establish any connection between the facts of those cases and
the facts of the instant action.  Without any argument
pertaining to the facts and circumstances of this case, the two-
year estimate is an ungrounded speculation, and the likelihood
of a front pay award has not been demonstrated by a
preponderance of the evidence.  Therefore, the Court declines to
include front pay in calculating the amount in controversy.

        In sum, $51,010.50 will be included in the amount in
controversy to account for Plaintiff's lost wages.

    **B.    Attorneys' Fees**

        Defendant argues the Court should include attorneys'
fees in the amount in controversy calculation because
"[a]lthough Plaintiff currently is pro se, as a practical matter
she will need to hire counsel if she wishes to continue pursuit
of her claims."  [Mem. in Opp. at 13 (emphasis omitted).]
Defendant argues that "the Court should assume that Plaintiff
will retain counsel as 'a court must include future attorneys'
fees recoverable by statute or contract when assessing whether
the amount-in-controversy requirement is met.'"  [Id. (quoting

<u>Fritsch v. Swift Transp. Co. of Ariz., LLC</u>, 899 F.3d 785, 794

(9th Cir. 2018).

Defendant's reliance on <u>Fritsch</u> is misplaced.  First,

the plaintiff in <u>Fritsch</u> brought his complaint as a putative

class action, which was removed pursuant to the Class Action

Fairness Act ("CAFA").  899 F.3d at 788.  A class action

requires representation by an attorney, unless a statute

provides otherwise.  Fed. R. Civ. P. 23(g)(1).  Here, there has

been no allegation that Plaintiff is bringing claims under a

statute that requires her to hire counsel, nor that she is

contemplating doing so.  Further, the Ninth Circuit held that:

> if a plaintiff would be entitled under a contract
> or statute to future attorneys' fees, such fees
> are at stake in the litigation and should be
> included in the amount in controversy.  The
> defendant retains the burden, however, of proving
> the amount of future attorneys' fees by a
> preponderance of the evidence.

<u>Fritsch</u>, 899 F.3d at 788.  Here, Defendant has not met its

burden.  Even if Plaintiff would be entitled to attorneys' fees

under a statute or contract, Defendant's counsel's assessment

that Plaintiff will need to hire counsel to be successful does

not satisfy the preponderance of the evidence standard.  That is

to say, Defendant's counsel's assessment of what Plaintiff

should do is not evidence of what is more likely than not to

happen.  Next, in the Ninth Circuit's usage of "future

attorneys' fees," the word "future" modifies the word "fees,"

not the word "attorneys.'". See id. at 794. There, the
attorneys' fees a party had incurred from the inception of the
case to the time the notice of removal was filed were
distinguished from attorneys' fees that were likely to be
incurred subsequent to the notice of removal. The Ninth Circuit
held that the appropriate measure for the amount in controversy
included both the fees incurred up to the time of removal and
the fees likely to be incurred subsequent to removal. Id.
Therefore, the fees that were included in the amount in
controversy calculation were those of an already-hired attorney.
There is no indication that the unsupported speculation a pro se
party will choose to hire an attorney at some point in the
future is sufficient to place those hypothetical sums at stake
in the litigation. Finally, the general presumption against
removal does not attach to removal pursuant to CAFA. Dart
Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 89 (2014).
Here, the removal was not made pursuant to CAFA, so the
presumption against removal is in full effect. Therefore,
Fritsch is distinguishable from the instant case and does not
support finding that an estimation of attorneys' fees attaches
to a pro se plaintiff for the purpose of determining amount in
controversy.

　　　　For these reasons, no attorneys' fees will be included
in the amount in controversy calculation.

14

## C.  **Punitive Damages**

Defendant argues punitive damages are properly considered in the amount in controversy because an award of punitive damages is possible under 42 U.S.C. § 1981a. [Mem. in Opp. at 14 & n.6.] "It is well established that punitive damages are part of the amount in controversy in a civil action." Gibson v. Chrysler Corp., 261 F.3d 927, 945 (9th Cir. 2001) (some citations omitted) (citing Bell v. Preferred Life Assur. Society, 320 U.S. 238, 240, 64 S.Ct. 5, 88 L.Ed. 15 (1943)).[7]  But, a removing defendant "must present evidence that punitive damages will more likely than not exceed the amount needed to increase the amount in controversy to $75,000." Burk v. Med. Sav. Ins. Co., 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004) (citing McCaa v. Mass. Mut. Life Ins. Co., 330 F. Supp. 2d 1143, 1149 (D. Nev. 2004)).  Therefore, to establish punitive damages as part of the amount in controversy calculation, "a party asserting federal diversity jurisdiction may . . . introduce evidence of jury verdicts in cases involving analogous facts." Fisher, 2018 WL 6323077, at *6 (citation and quotation marks omitted).  Defendant lists four allegedly analogous cases

---

[7] Gibson has been superseded by statute on other grounds. See, e.g., Abikhalil v. Am. Med. Response Ambulance Serv., Inc., No. CV 15-9358 PSG (PJWx), 2016 WL 429764, at *2 (C.D. Cal. Feb. 2, 2016).

in support of its argument that punitive damages would satisfy

the jurisdictional threshold:

> Ellen Harris v. The Queen's Medical Center
> United States District Court, Honolulu, Hawaii
> Jury Awarded $3,200,000 damages for racial
> discrimination.
> February 28, 2018
>
> Keri Gall v. The Funny Farm, Inc., a Hawaii
> Corporation, and Kimberly W. Dey, Individually
> Circuit Court for the First Circuit, Hawaii
> Jury Awarded $930,000 damages for retaliatory
> termination.
> September 9, 2010
>
> Rosi Godinez v. Alta-Dena Certified Dairy, LLC,
> Maria Flores, and Does 1-20, Inclusive
> United States District Court, Central District,
> Los Angeles, California
> Jury Awarded $545,000 for wrongful termination
> and disability discrimination, *inter alia*
> March 14, 2016
>
> Larkin Landau v. County of Riverside, a
> Governmental Entity
> United States District Court, Central District,
> Los Angeles, California
> Jury Awarded $500,000 damages for *inter alia*,
> disability discrimination, under the Americans
> with Disabilities Act.
> February 12, 2010

[Mem. in Opp. at 16-17 (citing Decl. of Nicole K. Hudspeth

("Hudspeth Decl."), Exh. B (collection of reports from

www.verdictsearch.com ("VerdictSearch")) (some emphases

omitted);[8] Hudspeth Decl. at ¶¶ 3-4.]  Based on Defendant's

_____

[8] The cases included by Defendant were not printed in a recognized reporter or presented in a judicially noticeable format.  The Court may take judicial notice of facts that are
(. . . continued)

counsel's representations, these are cases where punitive

damages were awarded and therefore support a determination that

an award of punitive damages in the instant case is likely and

will push the amount in controversy over the jurisdictional

threshold.  However, Defendant did not analogize, explain,

compare, contrast or identify reasons why the cited cases are

factually similar to the instant action.  "While citing these

cases merely illustrates that punitive damages are possible, it

in no way shows that a punitive damage award is likely or even

probable in the instant action."  See Barrera v. Albertsons LLC,

Case No. 2:18-CV-10637-RGK-AFM, 2019 WL 1220764 (C.D. Cal.

Mar. 15, 2019) (citation and quotation marks omitted).  "[T]he

mere possibility of a punitive damages award is insufficient to

prove that the amount in controversy requirement has been met."

Hill v. Avis Budget Car Rental, LLC, No. CV 14-1350 FMO (MANx)

---

"not subject to reasonable dispute" because they "can be
accurately and readily determined from sources whose accuracy
cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).
Here, the VerdictSearch reports appear to be documents written
by a VerdictSearch employee based on: 1) interviews with one or
more of the attorneys involved; see, e.g., Hudspeth Decl.,
Exh. B at CM/ECF pg. 3 of 15 ("This report is based on
information that was provided by plaintiff's counsel.  Defense
counsel did not respond to the reporter's phone calls."); or
2) an interview with an involved attorney and review of a
newspaper article, see id. at CM/ECF pg. 6 of 15 ("This report
includes information that was gleaned from an article published
by the Star Advertiser and an interview of plaintiff's counsel.
Defense counsel did not respond to the reporter's phone
calls.").  No other sources are cited.

2014 WL 1325556, at *3 (C.D. Cal. Apr. 2, 2014) (citations and
quotation marks omitted).  Therefore, the mere fact that other
cases have resulted in punitive damages awards is insufficient
to warrant the inclusion of punitive damages in the amount in
controversy where Defendant failed to carry its burden of
demonstrating similarity between the sample cases and the
instant action.  See Reyes, 2019 WL 4187847, at *4 (declining to
include punitive damages in the amount in controversy
calculation where the defendant had "made no effort to explain
why [the sample cases] are similar" to the facts at issue
(citation omitted)).

        Furthermore, even if the VerdictSearch reports were
judicially noticeable, the facts of the cited cases are so
distinguishable from those of the instant case that the cases
would not be considered analogous, nor would they be helpful in
determining whether to include punitive damages in the amount in
controversy calculation.  In Harris, an African-American nurse
received a racist note in her work mailbox and a picture of a
hangman's noose taped to her locker after reporting safety
violations.  [Hudspeth Decl., Exh. B at 2.]  An expert testified
about the symbolism of the noose to the African-American
community and the jury found that the defendant employer had
engaged in discrimination.  [Id.at 2-3.]  In Gall, a female
employee, who lived with her family in employer provided

                            18

housing, was terminated after reporting that a male co-worker attempted to kiss her. [Id. at 5.] As a result of her termination, she also lost her home. [Id.] According to the VerdictSearch report, while she sought lost wages, and general and punitive damages, she actually received emotional distress damages and wage loss damages, but none of the damages she received were expressly attributed to punitive or exemplary damages. See id. at 5-6. Similarly, nothing in the Godinez VerdictSearch report submitted by Defendant indicates the plaintiff was awarded punitive damages. See id. at 7-10. In Landau, the plaintiff was awarded damages for emotional distress, but there is no indication in the VerdictSearch report submitted by Defendant that she was awarded punitive damages. See id. at 11-15. Therefore, only one out of the four VerdictSearch reports submitted by Defendant expressly mentions that punitive damages were awarded, and that case, Harris, along with the other three cases, is factually distinguishable from the instant action. Thus, the cases submitted by Defendant do not provide evidence that punitive damages are more likely to be awarded than not.

For these reasons, Defendant has not met its burden. See Belton v. Hertz Local Edition Transporting, Inc., No. 19-cv-00854-WHO, 2019 WL 2085825, at *6 (N.D. Cal. May 13, 2019) (finding that, where the sample cases were factually

19

distinguishable from the case at issue, the removing defendant had effectively submitted no evidence regarding damages, and the general presumption against removal required remand). Therefore, because "any doubt about the right of removal requires resolution in favor of remand," see Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) (citation omitted), and here the proffered punitive damages evidence has not diminished any doubt about the right of removal, punitive damages will not be included in the amount in controversy calculation.

### D. **Request for Limiting Affidavit or Declaration**

Defendant requests that, in the event the Court is inclined to remand the instant case to state court, "the Court order Plaintiff to submit an affidavit or declaration capping her damages sought, including fees, at $75,000." [Mem. in Opp. at 17.] Defendant has not submitted any authority suggesting such an affidavit or declaration is required to calculate the amount in controversy, or to remand a case. Therefore, as an exercise of discretion, Defendant's request is denied.

## II. **Plaintiff's Request for Fees and Costs**

Plaintiff argues removal of the instant case by Defendant was done in bad faith and requests that the Court order Defendant to pay Plaintiff $750.00. [Pltf.'s Decl. at ¶¶ 23-26.] "An order remanding the case may require payment of

just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447. The award of fees and costs is at the discretion of the district court. Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008). The removal statute provides for such fees because "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005). However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Id. at 141 (citations omitted). Therefore, "bad faith need not be demonstrated." Moore v. Permanente Med. Grp., Inc., 981 F.2d 443, 448 (9th Cir. 1992). Instead, the objectively reasonable basis is determined in light of whether the law in the Ninth Circuit is so clear "as to make Defendants' endeavor entirely frivolous." Lion Raisins, Inc. v. Fanucchi, 788 F. Supp. 2d 1167, 1175 (E.D. Cal. 2011).

Here, Plaintiff argues the $750 award is warranted based on Defendant's "frivolous, malicious and unsupported actions." [Pltf.'s Decl. at ¶ 21.] Plaintiff asserts Defendant's bad faith was demonstrated by the conduct of

Defendant and Defendant's counsel throughout the litigation.
[Id. at ¶ 24.]  While the Court ultimately disagrees with
Defendant's calculation of the amount in controversy, the law in
the Ninth Circuit had not "clearly foreclosed the defendant's
basis of removal."  See Lussier, 518 F.3d at 1066.  Therefore,
removal was not "entirely frivolous."  See Lion Raisins, 788 F.
Supp. 2d at 1175.  Furthermore, unusual circumstances are not
present here.  For these reasons, fees and costs will not be
awarded to Plaintiff.

## CONCLUSION

On the basis of the foregoing, the instant case is *sua
sponte* REMANDED to the State of Hawai`i, Third Circuit Court.
The Clerk's Office is DIRECTED to effectuate the remand on
**April 27, 2020,** unless a timely motion for reconsideration of
the instant Order is filed.

In light of the *sua sponte* remand, this Court will
take no action on Defendant's Motion to Dismiss Tort Claims,
filed February 11, 2020, [dkt. no. 12].

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 10, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

<u>**ANDREA ILIM DECOSTA VS. HEADWAY WORKFORCE SOLUTIONS;**</u> **CV 20-00015**
**LEK-KJM; ORDER SUA SPONTE REMANDING CASE TO STATE COURT**